# EXHIBIT 3

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

| | |
|---|---|
| Maine Office of the Public Advocate, Maine Public Utilities Commission, and Maine Department of Energy Resources, *Complainants*,<br><br>v.<br><br>ISO New England Inc., Central Maine Power Company, Versant Power, and Maine Electric Power Company, *Respondents.* | Docket No. EL26-_____-000 |

**COMPLAINT OF MAINE STATE AGENCIES CHALLENGING RTO ADDER COSTS AND REQUESTING TERMINATION**

Pursuant to sections 206 and 306 of the Federal Power Act (FPA)[1] and Rule 206 of the Federal Energy Regulatory Commission's (Commission or FERC) Rules of Practice and Procedure,[22] the Maine Office of the Public Advocate, Maine Public Utilities Commission, and Maine Department of Energy Resources (Maine State Agencies or Complainants) hereby file this Complaint against Central Maine Power Company (CMP), Versant Power (Versant), and Maine Electric Power Company (MEPCO) (collectively, Maine TOs), and ISO New England Inc. (ISO-NE). For the reasons stated here, Complainants ask that the Commission (1) find unjust and unreasonable the continued collection by Maine TOs of the previously-

---

[1] 16 U.S.C. §§ 824e, 825e.

[2] 18 C.F.R. § 385.206.

authorized fifty basis point return on equity (ROE) adder for participation in ISO-NE; (2) direct the submission of a compliance filing terminating the adder; and (3) direct the refunding of any adder-related charges imposed after the refund effective date of this Complaint.[3]

## I. INTRODUCTION

CMP and Versant provide retail electric distribution service to Maine consumers. CMP, Versant, and MEPCO all own and operate Commission jurisdictional transmission facilities within the State of Maine. All three qualify as transmission and distribution utilities (T&D utilities) under Maine law.[4] CMP and Versant have been participants in ISO-NE, the region's Transmission Organization, since its inception.[5] MEPCO submitted its facilities

---

[3] ISO-NE has been included as a Respondent because the Complaint challenges charges authorized under ISO-NE's Open Access Transmission Tariff (Tariff). Maine State Agencies anticipate that ISO-NE will ask to be dismissed from this action, arguing that it is only the billing agent for CMP and Versant and not the beneficiary of any adder. *See, e.g.,* Motions of ISO New England Inc. for Dismissal and, to the Extent Necessary, to Postpone Answer Date, and Request for Expedited Action, *Coakley v. Bangor Hydro-Elec. Co.*, Docket No. EL11-66 (Oct. 4, 2011), eLibrary No. 20111004-5031, granted in *Coakley v. Bangor Hydro-Elec. Co.*, 139 FERC ¶ 61,090 (2012). Maine State Agencies will not object if a similar motion is filed here, assuming it includes an express commitment by ISO-NE to abide by any Commission decision in this proceeding, including by filing any Tariff amendments that may be ordered and processing any related refunds.

[4] Maine Rev. Stat., Title 35-A, § 102(2-0-B) ("'Transmission and distribution utility' means a person, its lessees, trustees or receivers or trustees appointed by a court, owning, controlling, operating or managing a transmission and distribution plant for compensation within the State, except where the electricity is distributed by the entity that generates the electricity through private property alone solely for the use of: A. The entity; B. The entity's tenants; C. Commercial or industrial consumers located on the property where the entity is located or on abutting property; or D. Commercial or industrial consumers located on a commercial or industrial site within the control area of the New England independent system operator and located in a municipality north of the Town of Chester that was served by the entity or its predecessor without using the transmission and distribution plant of a public utility prior to December 31, 2018. The exception under this paragraph does not apply if more than 25% of the nameplate capacity of the entity is used to serve data centers located on the commercial or industrial site. For the purposes of this paragraph, 'data center' means any facility in the State, which may be a freestanding structure or a facility within a larger structure, that primarily contains electronic equipment used to process, store and transmit digital information that uses environmental control equipment to maintain the proper conditions for the operation of electronic equipment.").

[5] ISO-NE began operations in 1997, at which time CMP and Versant (then Bangor Hydro-Electric Company) were each participants in the new structure. It received Commission approval to operate as a "regional transmission organization" (RTO) in 2004. *ISO New Eng., Inc. v. New Eng. Power Pool*, 106 FERC ¶ 61,280, P 1 n.1,

to the operational control of ISO-NE subsequent to the approval of ISO-NE's RTO status.[6] For more than twenty years, the Maine TOs' regional electric transmission rates have included a fifty basis point adder to their Commission-approved base ROE. The Commission granted this RTO Participation Adder (or Adder) as an Order No. 679[7] inducement or incentive for their then-voluntary proposal to "transfer the day-to-day operational control authority over their transmission facilities"[8] to a Commission-approved Transmission Organization.[9]

However, this Commission's "longstanding policy [is] that incentives should only be awarded to induce voluntary conduct." *Dayton Power & Light Co. v. FERC*, 126 F.4th 1107, 1117 (6th Cir. 2025)(quoting *Cal. Pub. Utils Comm'n v. FERC*, 879 F.3d 966, 978 (9th Cir. 2018)), *cert. denied sub nom. American Electric Power Service Corp. v. FERC,* No. 24-1318 (Nov. 10, 2025). In 2026, Maine enacted a law establishing that "a transmission and distribution

---

*corrected*, 107 FERC ¶ 61,051, *reh'g granted in part and denied in part*, 109 FERC ¶ 61,147 (2004), *pet. for review denied sub nom., Me. Pub. Utils. Comm'n v. FERC*, 454 F.3d 278 (D.C. Cir. 2008) (March 2004 Order) (identifying the filing New England transmission owners, including CMP and Bangor Hydro-Electric Company—Versant's predecessor—as participants). While ISO-NE has achieved RTO status, its name has remained unchanged. As explained on its website, "[w]hile 'ISO' remains part of our name, FERC designated us an RTO in 2005. [Independent System Operators (ISOs)] and RTOs share many core principles and functions in operating regional grids, running wholesale markets, and power system planning." ISO-NE, Industry Standards, Structure, and Relationships (last visited June 9, 2026), https://www.iso-ne.com/about/what-we-do/industry-standards-structure-and-relationships.

[6] *See*, *ISO New England, Inc*., 121 FERC ¶ 61,097 (2007)(Order Conditionally Accepting the "MEPCO Roll-In Proposal"); *ISO New England Inc. et al*., 124 FERC ¶ 61,297 (2008)(Order incorporating changes consistent with the intent of the "Revised MEPCO Roll-In Proposal" contained within a Settlement Agreement approved by the Commission); *ISO New England Inc. et al*., No. ER07-1289-008, *et al*., Letter order accepting ISO New England, Inc's, *et al.,* 10/29/08 filing of revisions to the ISO-NE's Open Access Transmission Tariff (12/9/08).

[7] *Promoting Transmission Investment Through Pricing Reform*, Order No. 679, 116 FERC ¶ 61,057 ("Order 679"), *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006) ("Order 679-A"), *order on reh'g*, Order No. 679-B, 119 FERC ¶ 61,062 (2007) ("Order 679-B"). "Order 679 established upward adjustments, or 'incentive adders,' to the rate of return on equity of utilities that participate in transmission organizations." *California Public Utilities Comm'n v. FERC*, 879 F.3d 966, 970 (9th Cir. 2018).

[8] March 2004 Order P 245.

[9] Under Maine Law, "'Regional transmission organization' means the independent systems operator that administers and oversees the wholesale electricity markets in which the State participates." Maine Rev. State, Title 35-A, §10102(8).

utility may not own or control a transmission and distribution plant located in the State unless the transmission and distribution utility participates in a regional transmission organization."[10] Because the Maine TOs operate as T&D utilities and "own or control . . . transmission . . . plant[s]" in the state, the law's ISO-NE participation requirement applies squarely to each of these entities. As such, their continued participation in ISO-NE is no longer "voluntary," and the Commission should no longer extend the Adder since it cannot induce what is required by law. Yet the Maine TOs continue to receive their RTO Participation Adders. Continued payment of this Adder despite state-mandated participation in the RTO is neither just nor reasonable.

The RTO Participation Adder has been a costly addition to the rates paid by New England ratepayers for regional transmission service. During 2024 alone, the CMP and Versant-related RTO Participation Adder increased charges to the region by roughly $6 million, with the share paid by Maine ratepayers totaling approximately $700,000.[11] Worse, the Adder imposes a substantial, incremental charge on electric transmission rates that already represent some of the highest in the nation. The External Market Monitor for ISO-NE reported in June 2025 that ISO-NE had the "highest transmission costs of any system operator in the country,"[12] and rates "more than double the average . . . observed in the other

---

[10] Public Laws 2026, Chapter 646, Codified as Maine Rev. State, Title 35-A, § 3033-B (effective July 29, 2026).

[11] CMP, Versant, and MEPCO, Annual Updates Regarding ISO Tariff Charges in Effect as of June 1, 2025 and January 1, 2026, ISO New Eng. Inc., Docket No. ER20-2054 (July 31, 2025), eLibrary No. 20250731-5237 (Updated Rate Filing). The Maine State Agencies acknowledge that the Maine TOs receive ROE incentives in addition to the RTO adder. To the extent that the applicable combination of incentives causes the ROE of any utility to exceed the maximum ROE allowed for these companies by the Commission, the value of removing the RTO adder may be reduced.

[12] Jonathan Dowds, *High Transmission Costs Main Driver of NE's Rate Increases*, Renewable Energy Vermont (Nov. 6, 2025), https://www.revermont.org/high-transmission-costs-in-new-england-reflect-strict-reliability-standard/.

RTOs."[13] Similarly, a study by the United States Department of Energy shows that New England spends $5.90 on transmission for every megawatt-hour of demand served, which is a higher incremental cost than in any other U.S. region.[14] And the picture for Maine consumers is no better when considered in light of overall charges for electric service. The most recent residential electricity pricing data available on the Commission's website shows that, during January 2026, Maine consumers paid the third-highest cents per-kilowatt hour rates of any state in the country.[15] Regarding transmission specifically, annual transmission costs as a whole have grown by 84% and 96% respectively for Versant and CMP customers since 2016, and now make up 18% of the typical Maine residential customer's monthly electricity bill.[16]

The Commission bears the responsibility under the Federal Power Act to ensure that incentive-based rate treatments, like all Commission-jurisdictional rates, are just and reasonable.[17] As the Commission long ago observed, it is neither just nor reasonable to "reward" a utility "for doing what it is supposed to do."[18] Accordingly, the Commission has

---

[13] Potomac Economics, *2024 Assessment of the ISO New England Electricity Market,* Executive Summary at vi (June 2025) (2024 State of the Market Report), https://www.potomaceconomics.com/wp-content/uploads/2025/06/ISO-NE-2024-EMM-Annual-Report_Final.pdf.

[14] U.S. Dept. of Energy, *National Transmission Needs Study* at iii (Oct. 2023), https://www.energy.gov/sites/default/files/2023-10/National_Transmission_Needs_Study_2023.pdf.

[15] FERC, *How Affordable and Reliable is Your Power?* (last visited June 9, 2026), https://www.ferc.gov/how-affordable-and-reliable-your-power.

[16] Maine Public Utilities Commission 2025 Annual Report (February 1, 2026) at pp. 12-13, https://www.maine.gov/mpuc/sites/maine.gov.mpuc/files/inline-files/2025%20Annual%20Report%20Final.pdf.

[17] 16 U.S.C. § 824d. Similarly, FPA section 219(d), 16 U.S.C. § 824s(d), provides that all rates adopted under the incentives provision are subject to the Commission's authority under sections 205 and 206 "that all rates, charges, terms, and conditions be just and reasonable and not unduly discriminatory or preferential."

[18] *New Eng. Power Pool*, 97 FERC ¶ 61,093, at 61,477 (2001), *on reh'g*, 98 FERC ¶ 61,249 (2002).

"formally adopted the view that, under Order 679, a utility that is legally required to join an RTO is ineligible for the RTO adder" – a position affirmed by the Sixth[19] and the Ninth[20] Circuit courts of appeals. It has likewise held that where state law now mandates such participation any adder previously authorized should be terminated.[21] That is the case here.

Given the settled legal principles and the straightforward facts at hand, Maine State Agencies urge the Commission to act in accordance with similar decisions affirmed by the multiple appellate courts,[22] and find that the Maine TOs' transmission formula rates are unjust and unreasonable and must be revised to exclude the payment of an incentive to encourage behavior that is now part of the recipient utilities' legal obligation. As paying a bonus cannot induce behavior that is already required, the Commission should deem the Maine TOs ineligible to receive the RTO Participation Adder. In light of the 2026 Maine law mandating their participation in ISO-NE as Maine transmission owners, the Commission should direct the Maine TOs to eliminate the Adder from the charges they collect from ratepayers.

Accordingly, Maine State Agencies request that the Commission:

(1) establish a refund effective date pursuant to FPA section 206 as of the date of this Complaint;

---

[19] *Dayton Power & Light Co.*, 176 FERC ¶ 61,025, P 54 (2021), *on reh'g*, 178 FERC ¶ 61,102, PP 14-18(2022) (*Dayton*), *aff'd*, *Dayton Power & Light Co. v. FERC*, 126 F.4th 1107 (6th Cir. 2025), *cert. denied sub nom American Electric Power Service Corp. v. FERC*, No. 24-1318, (Nov. 10, 2025); *Pac. Gas & Elec. Co.*, 185 FERC ¶ 61,243 (2023) (*PG&E*), *on reh'g,* 187 FERC ¶ 61,167 (2024), *aff'd sub nom., Pac. Gas & Elec. Co v. FERC*, 2025 WL 1912363 (9th Cir. July 11, 2025), *cert denied*, *Pacific Gas and Electric Co. et al. v. Federal Energy Regulatory Commission et al.*, No. 25-438 (Feb. 23, 2026).

[20] *Pac. Gas & Elec. Co.*, 2025 WL 1912363, at *4 (finding that the Commission "did not act arbitrarily, capriciously, or contrary to law" by denying a utility's request for an RTO Participation Adder because that utility's membership in a Transmission Organization was involuntary).

[21] *Dayton*, 178 FERC ¶ 61,102, PP 20-26; *PG&E*, 185 FERC ¶ 61,243, P 42.

[22] *See* n.19 *supra*.

(2) find the Maine TOs' continued receipt of RTO Participation Adder charges unjust and unreasonable;

(3) require ISO-NE to adopt as a replacement rate a revised Tariff that removes payment of the RTO Participation Adder from the rates charged by the Maine TOs; and

(4) direct that the Maine TOs refund any RTO Adder-related charges imposed after the effective date of this Complaint, consistent with the Commission's FPA section 206 authority.

## II. BASIS FOR RELIEF

Relief is justified because the *sine qua non* for the Maine TOs' receipt of the RTO Participation Adder—a voluntary decision to participate in a regional transmission organization instead of retaining or resuming functional control of their transmission facilities—has disappeared. Maine law now prohibits the Maine TOs from owning or controlling transmission facilities in the state unless they participate in an RTO. Under these circumstances, the Adder increases the rates paid by Maine consumers but provides no corresponding consumer benefit, which renders the Adder unjust and unreasonable.

### A. *Voluntary participation is required for any RTO Participation Adder.*

As both the Sixth and Ninth Circuits have correctly recognized, "incentive[s] cannot 'induce' behavior that is already legally mandated."[23] On the contrary, and as found by the Commission, "[t]he very concept of inciting, inducing, or encouraging an action presumes the actor's freedom to choose whether to perform it."[24] Because an incentive cannot induce behavior that is already legally mandated, "the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an [RTO

[23] *Cal. Pub. Utils. Comm'n v. FERC*, 879 F.3d 966, 974 (9th Cir. 2018) (*CPUC I*); *see also Dayton Power & Light Co. v. FERC*, 126 F.4th 1107, 1123 (6th Cir. 2025) (*Dayton Power & Light Co.*) ("Indeed, an incentive can only induce joining an RTO if doing so is voluntary.")

[24] *Dayton Power & Light Co.*, 126 F.4th at 1123.

Participation Adder.]"[25] Accordingly, Commission precedent is to deem ineligible for RTO Participation Adders those utilities whose participation in a Transmission Organization is mandated by state law.[26]

The typical avenue by which a utility receives an RTO Participation Adder is pursuant to FPA section 219[27] and the related implementing Order No. 679.[28] As such, the Sixth and Ninth Circuit precedent affirming the Commission's decision to strip RTO Participation Adders from ineligible entities focused primarily on incentives awarded under that statutory provision.

What the *Dayton* decision further makes clear is that the prohibition against adders for mandatory RTO participation applies even where such adders may have been part of a comprehensive settlement. While FERC had denied a participation adder to American Electric Power, it had allowed FirstEnergy and Duke to retain their RTO participation adders on grounds that the adders for those utilities had been incorporated as part of a comprehensive settlement agreement. But as the court held, this was essentially a distinction without a difference:

> If all three utilities' rates were based on settlements and can be separated into a base ROE and a 50-basis-point RTO adder, then, as with AEP—and to comply with Section 219(c) and Order 679—FERC must also remove the RTO adder for Duke and FirstEnergy. We conclude, therefore, that FERC acted arbitrarily and capriciously both by treating AEP differently from Duke and FirstEnergy, and by continuing to approve the adder (expressly or impliedly) to utilities that had not joined an RTO voluntarily.[29]

The Sixth Circuit's decision in *Dayton* drew its reasoning heavily from the Ninth

---

[25] *Dayton,* 176 FERC ¶ 61,025, P 27 (citing *CPUC I*, 879 F.3d at 975).

[26] *See, e.g., Dayton*, 178 FERC ¶ 61,102, PP 20-26; *PG&E*, 185 FERC ¶ 61,243, P 42.

[27] 16 U.S.C. § 824s.

[28] *Promoting Transmission Inv. through Pricing Reform*, Order No. 679, 116 FERC ¶ 61,057, *on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *clarified*, 119 FERC ¶ 61,062 (2007).

[29] *Dayton Power & Light, supra*, 126 F.4th at 1134.

Circuit's earlier observation that the Commission's "longstanding policy," which preceded the passage of FPA section 219, "prohibits FERC from rewarding utilities for past conduct or for conduct which they are otherwise obligated to undertake."[30]

The Commission recognized the importance of incentives as a means of inducing voluntary behavior when it decided in 2004 to approve the proposal by CMP, Versant, and others to set rates inclusive of a fifty basis point RTO Participation Adder. Commission policy encouraging the formation of Transmission Organizations was at that time set forth primarily in Order No. 2000[31] and in the Commission's *Proposed Pricing Policy*.[32] Order No. 2000 was adopted to "encourage *voluntary* and timely formation of RTOs,"[33] with the *Proposed Pricing Policy* operating in tandem with Order No. 2000 to achieve that goal by "creating incentives for RTO participation."[34]

Consistent with this framework, in awarding the Maine TOs the RTO Participation Adder, the Commission determined that their "*voluntary* proposal to establish [ISO-NE] and their commitment to transfer the day-to-day operational control authority over their

---

[30] *CPUC I,* 879 F.3d at 977 (explaining that this policy is "evinced in a series of FERC decisions and statements").

[31] *Regional Transmission Organizations,* Order No. 2000, 89 FERC ¶ 61,285 (1999), *order on reh'g*, Order No. 2000-A, 90 FERC ¶ 61,201 (2000), *appeal dismissed sub nom. Pub. Util. Dist. No. 1 v. FERC*, 272 F.3d 607 (D.C. Cir. 2001).

[32] *Proposed Pricing Pol'y for Efficient Operation & Expansion of Transmission Grid*, 102 FERC ¶ 61,032 (2003) (*Proposed Pricing Policy*). While the RTO Adder awarded to the Maine TOs predates Order No. 679, the *Proposed Pricing Policy*, which was issued prior to the March 2004 Order, was plainly the blueprint for that Adder. The *Proposed Pricing Policy* provided that "[a]ny entity that transfers operational control of transmission facilities to a Commission-approved RTO would qualify for an incentive adder of 50 basis points on its ROE for all such facilities transferred." *Id.* P 24.

[33] *Id.* P 3 (emphasis added).

[34] *Id.* P 18. Note that the *Proposed Pricing Policy* did not contemplate that such incentives would be received indefinitely or in all circumstances. On the contrary, a utility could only qualify for an RTO Participation Adder under the *Proposed Pricing Policy* until December 31, 2004, and "would be authorized to receive the incentive for RTO participation until December 31, 2012." *Id.* P 28.

Document Accession #: 20260901-5183 Filed Date: 09/01/2026

transmission facilities to [ISO-NE], warrant[ed] a 50 basis point incentive adder to the ROE component recovered in [ISO-NE's] transmission rates for Regional Network service."[35]

This history makes clear that the Maine TOs were awarded their RTO Participation Adders because they engaged in behavior—namely, establishing and joining ISO-NE—that was not then legally mandated. As a result, the fifty basis point ROE addition awarded *at that time* arguably *could* incent the Maine TOs to engage in a course of action that they might not have otherwise chosen. But even assuming against logic that the adder continued to serve as an inducement two decades later,[36] things have changed. The recent enactment of the referenced change in Maine law means that the Maine TOs' participation in ISO-NE is no longer voluntary. This significant change in circumstances requires the Commission to reevaluate whether the Maine TOs' continued receipt of the Adder is warranted—in particular, whether doing so can still be said to incent in any way the Maine TOs' membership in ISO-NE. Given the unambiguous language of the Maine statute and settled Commission precedent, the answer is plainly "no."

### B. *The Maine TOs' Participation in ISO-NE is no longer voluntary.*

Maine law provides:[37]

---

[35] March 2004 Order P 245 (emphasis added).

[36] The Commission itself had seriously questioned the logic of that assumption. In a still pending NOPR, the Commission has proposed terminating RTO participation adders after three years. *Electric Transmission Incentives Policy Under Section 219 of the Federal Power Act*, 175 FERC ¶ 61,035 at PP 11 (2021) ("we propose that each utility that has previously received an ROE incentive for joining and remaining in a Transmission Organization for three or more years must, within 30 days of the effective date of the final rule, submit a compliance filing removing the incentive from its transmission tariff or, if the transmitting utility joined an Transmission Organization in the previous three years, adding language to its transmission tariff to terminate its incentive three years from the date it turned over operational control of its transmission facilities").

[37] Public Laws 2026, Chapter 646, codified as Maine Rev. State, Title 35-A, § 3033-B (effective July 29, 2026). Maine Rev. State, Title 35-A, §10102(8), referenced in subsection 1, states that "'Regional transmission organization' means the independent systems operator that administers and oversees the wholesale electricity markets in which the State participates."

**1. Regional transmission organization; definition.** For the purposes of this section, "regional transmission organization" has the same meaning as in section 10102, subsection 8.

**2. Participation mandatory.** Except as provided in subsection 3, a transmission and distribution utility may not own or control a transmission and distribution plant located in the State unless the transmission and distribution utility participates in a regional transmission organization.

**3. Exceptions.** The provisions of this section do not apply to:

A. A consumer-owned transmission and distribution utility as defined in section 3501, subsection 1; or

B. A transmission and distribution utility that owns or controls a transmission and distribution plant located in an area of this State in which the retail electricity market is administered by the independent system administrator for northern Maine.

The requirements of this law are plain on their face. The Maine TOs cannot own or control transmission facilities in Maine—a factor essential and necessary to their continued operation in the State—unless they participate in ISO-NE.

The Commission has held in similar circumstances that a state law participation requirement renders a utility's participation in the relevant Transmission Organization non-voluntary. In *Dayton*, the Commission determined that Ohio law mandated participation in Transmission Organizations, rendering the utilities subject to that law non-voluntary members of PJM Interconnection, L.L.C. The Ohio law in question, Ohio Revised Code section 4928.12(A) provides that:

> Except as otherwise provided in sections 4928.31 to 4928.40 of the Revised Code, no entity shall own or control transmission facilities as defined under federal law and located in this state on or after the starting date of competitive retail electric service unless that entity is a member of, and transfers control of those facilities to, one or more qualifying transmission entities, as described in division (B) of this section, that are operational.

Like the Maine law, the Ohio law targets entities owning or controlling transmission

facilities and prohibits their operation in the state unless that entity participates in a Transmission Organization. The Commission determined that because the Ohio law set forth only one path by which entities could comply—participation in a Transmission Organization—that fact necessarily rendered such participation non-voluntary.[38] And the Commission determined that, "[c]onsistent with that longstanding policy, we do not believe it would be appropriate to award an incentive for an action that the requesting entity is required by law to take,"[39] even where that action comes with substantial benefits or risks. That conclusion applies with equal force to Maine's materially identical law.

The Commission's determination in *Pacific Gas & Electric Company* is similarly illuminating.[40] There, the Commission reviewed California Public Utilities Code section 362(c), which, like the Maine law, requires that "an electrical corporation subject to [California Public Utility Commission or CPUC] Decision 98-01-053 (January 21, 1998) . . . shall participate in the Independent System Operator." The Commission properly understood California's participation requirement as a mandate rendering the subject utilities' compliance non-voluntary.[41] Significantly, though the utilities in *Pacific Gas & Electric Company* had joined the California Independent System Operator voluntarily,[42] that initial, voluntary action did not preclude the Commission from reevaluating later whether their continued receipt of an RTO Participation Adder remained just and reasonable when

[38] *Dayton*, 176 FERC ¶ 61,025, P 60.

[39] *Id*. P 30.

[40] *Pac. Gas & Elec. Co.*, 187 FERC ¶ 61,167 (2024), *aff'd sub nom., Pac. Gas & Elec. Co. v. FERC*, 2025 WL 1912363 (9th Cir. July 11, 2025).

[41] *Id.* PP 36-37.

[42] *Id.* P 28.

they were no longer free to leave the RTO.[43] The same is true here.

There is no substantive difference between the Ohio and California statutes addressed previously by the Commission and the federal courts, and the Maine statute at issue here. The outcome is the same under any of them: the subject utilities are required by state law to participate in an RTO. And once that is clear, the basis for awarding a bonus to incentivize participation disappears. The Commission should find that the Maine law, like its counterparts in California and Ohio, mandates the Maine TOs' participation in an RTO. And, because participation in ISO-NE is the only way for the Maine TOs to comply with the law, the Commission should conclude that their participation in ISO-NE is non-voluntary.

### C. *The inclusion of the RTO Participation Adder in the Maine TOs' formula rates is unjust and unreasonable.*

The Commission has determined—and the Sixth Circuit has upheld—that where a formula rate includes an RTO Participation Adder for which the recipient is ineligible, that aspect of the formula rate is unjust and unreasonable, regardless of whether inclusion pushes the utility's overall ROE outside the zone of reasonableness.[44] Section 206 empowers the Commission to remedy unjust and unreasonable practices affecting rates. And because "the practice of granting RTO adders" to utilities that must participate anyway is "wrong," the

---

[43] The Commission had historically reasoned that an RTO adder was both an inducement to *join* an RTO and to *remain* in it. *CPUC I, supra*, 879 F.3d at 970. But as the court in *CPUC I* pointed out, an adder could not induce a utility to remain in an RTO if it was not free to leave. *Id*. at 974.

[44] *OCC v. AEPSC*, 181 FERC ¶ 61,214, P 60 ("[W]e find that OCC has shown that the rates for Ohio Power and AEP Ohio Transmission are unjust and unreasonable because the Commission specifically granted them an RTO Adder under section 219 and that their continued participation in a Transmission Organization is mandatory."). *See also Dayton Power & Light Co.*, 126 F.4th at 1132 ("The text [of FPA section 206] belies AEP's assertion that FERC must deem AEP's entire rate unjust and unreasonable before revoking the RTO adder. The statute refers to 'any' rate, charge, rule, regulation, or practice. The utilities' interpretation would allow a utility to abandon its RTO membership and retain its adder (in direct conflict with the goals of Section 219 and Order 679) as long as its overall rate remained within the zone of reasonableness. We refuse to adopt the utilities' atextual reading of Section 206. Instead, FERC must 'fix' any unjust or unreasonable practices, even though the OCC has not proven that the utilities' overall rates are unreasonable.").

Commission "'shall fix' it . . . by removing the RTO adder."[45] That is the case with respect to Respondents' formula rates, just as it was for the Ohio utilities.

### D. *The Commission should set a replacement rate by requiring tariff changes prohibiting the receipt by any of the Maine TOs of rates set using the RTO Participation Adder.*

Once the Commission finds a rate to be unjust and unreasonable, it is obligated to set a just and reasonable replacement.[46] As explained in FPA section 206(a):

> Whenever the Commission, after a hearing held upon its own motion or upon complaint, shall find that any rate [or] charge . . . is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order.

The statute is clear that the obligation to select and implement a replacement rate falls on the Commission—not on a complaining party.[47]

Consistent with its FPA obligations, the Commission should set a replacement rate by directing the Maine TOs (either directly or through ISO-NE) to eliminate the RTO Participation Adder from their wholesale transmission rates, lower the rates of return included in their wholesale transmission rate formulas, and provide refunds as requested, with a refund effective date as of the date of this Complaint.[48] This can be accomplished by

---

[45] *Dayton Power & Light Co.*, 126 F.4th at 1132.

[46] As explained in *Emera Maine v. FERC*, 854 F.3d 9, 24 (D.C. Cir. 2017), the Commission has "undoubted power under section 206" to change an existing rate "*whenever it determines such rate[] to be unlawful.*" (emphasis added) (citing *FPC v. Sierra Pac. Power Co.,* 350 U.S. 348, 353 (1956)).

[47] *Pub. Serv. Elec. & Gas Co. v. FERC*, 989 F.3d 10, 13 (D.C. Cir. 2021) ("[I]f the Commission determines that the rate is unlawful, it must establish a just and reasonable replacement rate." (citing 16 U.S.C. § 824e(a), (b))).

[48] Commission policy is that "in order to give maximum protection to customers, and consistent with our precedent, [the Commission has] historically tended to establish the section 206 refund effective date at the earliest date allowed by section 206. That date is the date of the complaint." *NECEC Transmission LLC v. NextEra Energy Resources, LLC*, 176 FERC ¶ 61,148, P 19 (2021); *see also* 16 U.S.C. § 824e(b) ("In the case of a proceeding instituted on complaint, the refund effective date shall not be earlier than the date of the filing of such complaint nor later than 5 months after the filing of such complaint.").

directing ISO-NE to adopt as a replacement rate a revised Tariff that removes payment of the RTO Participation Adder from the rates charged by the Maine TOs.

## III. RULE 206 REQUIREMENTS

To the extent not already provided above, Maine State Agencies provide the following additional information required by Rule 206 of the Commission's Rules of Practice and Procedure.[49]

### A. Good faith estimate of financial impact or harm (Rule 206(b)(4))

Based on data contained in the most recent Attachment F informational filing,[50] Maine State Agencies estimate that the inclusion of the Adder in the Maine TOs' rates increased charges to New England ratepayers during 2024 (the most recent year for which data are available) by roughly $6 million. Maine's share of that total is roughly 9%, or approximately $700,000 per year.

### B. Practical, operational, or nonfinancial impacts (Rule 206(b)(5))

There are no practical, operational, or other nonfinancial impacts of the matter that is the subject of this Complaint.

### C. Whether the matters are pending in any other FERC proceeding or other forum (Rule 206(b)(6))

To Maine State Agencies' knowledge, no related matters are pending in any Commission proceeding or in any other forum.

### D. Specific relief or remedy requested (Rule 206(b)(7))

The Complaint sets forth in detail the specific relief requested.

### E. Documents supporting the Complaint (Rule 206(b)(8))

---

[49] 18 C.F.R. § 385.206.

[50] *See* Updated Rate Filing.

There are no such documents.

### F. Use of alternative dispute resolution (Rule 206(b)(9))

Maine State Agencies do not believe that the issues raised here are amenable to alternative dispute resolution.

### G. Request for Fast Track Processing (Rule 206(b)(11))

Maine State Agencies do not request fast track processing of their Complaint.

### H. Notice (Rule 206(b)(10))

Maine State Agencies have appended a form of notice of this filing for publication in the Federal Register in accordance with the specifications in section 385.203(d) of the Commission's rules.

## IV. PARTIES AND COMMUNICATIONS

### A. Complainants

The Complainants are the Maine Office of the Public Advocate, the Maine Public Utilities Commission, and the Maine Department of Energy Resources.

### B. Respondents

The primary Respondents are Central Maine Power Company, Versant Power, and Maine Electric Power Company. For the reasons discussed in the body of the Complaint, ISO New England Inc. (ISO-NE) has been included as a Respondent because the Complaint challenges charges authorized under ISO-NE's Open Access Transmission Tariff (Tariff). Maine State Agencies would not object to ISO-NE's dismissal as a Respondent if it makes express its commitment to abide by any Commission decision in this proceeding, including by filing any Tariff amendments that may be ordered and processing any related refunds.

### C. Communications

All correspondence and communications to the Complainants in this docket should be addressed to the following individuals, whose names should be entered on the official service list maintained by the Secretary in connection with these proceedings:[51]

For the Maine Office of the Public Advocate:

Heather Sanborn
Public Advocate
Andrew Landry
Deputy Public Advocate
Maine Office of the Public Advocate
State House Station 112
Augusta, ME 04333-0112
(207) 624-3687
heather.sanborn@maine.gov
andrew.landry@maine.gov

Jonathan D. Schneider
Harvey L. Reiter
Mary Kate Jaworowski
STINSON LLP
1775 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006
(202) 785-9100
jonathan.schneider@stinson.com
harvey.reiter@stinson.com
marykate.jaworowski@stinson.com

[51] Maine State Agencies request a waiver of Rule 203(b)(3), 18 C.F.R. § 385.203(b)(3), to allow the inclusion of more than two persons on the official service list.

For the Maine Public Utilities Commission:

Ronald Guay
Staff Attorney
Maine Public Utilities Commission
18 State House Station
Augusta, ME 04333-0018
(207) 287-1563
ronald.guay@maine.gov

For the Maine Department of Energy Resources:

Ethan Tremblay
Deputy Commissioner
Maine Department of Energy Resources
62 State House Station
Augusta, Maine 04333-0062
(207) 530-2603
ethan.tremblay@maine.gov

Caleb Elwell
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8545
caleb.elwell@maine.gov

## V. SERVICE AND NOTICE

In accordance with Rule 206(c), Maine State Agencies have served a copy of this Complaint upon Central Maine Power Company, Maine Electric Power Company and Versant Power, as Respondents, simultaneously with the filing of the Complaint. Maine State Agencies have also served a copy of this Complaint upon ISO New England Inc.

## VI. CONCLUSION

WHEREFORE, for the foregoing reasons, the Commission should grant the Complaint and provide expeditiously the relief requested herein.

Respectfully submitted,

*/s/ Andrew Landry*
Heather Sanborn
Public Advocate
Andrew Landry

*/s/ Harvey Reiter*
Jonathan D. Schneider
Harvey L. Reiter
Mary Kate Jaworowski

Deputy Public Advocate
Maine Office of the Public Advocate
State House Station 112
Augusta, ME 04333-0112
(207) 624-3687
heather.sanborn@maine.gov
andrew.landry@maine.gov

STINSON LLP
1775 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006
(202) 785-9100
jonathan.schneider@stinson.com
harvey.reiter@stinson.com
marykate.jaworowski@stinson.com

*Counsel for Maine Office of the Public Advocate*

*/s/ Ronald Guay*
Ronald Guay
Staff Attorney
Maine Public Utilities Commission
18 State House Station
Augusta, ME 04333-0018
(207) 287-1563
ronald.guay@maine.gov

*Counsel for Maine Public Utilities Commission*

*/s/ Caleb Elwell*
Caleb Elwell
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8545
caleb.elwell@maine.gov

*Counsel for Maine Department of Energy Resources*

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

| | |
|---|---|
| Maine Office of the Public Advocate, Maine Public Utilities Commission, and Maine Department of Energy Resources, *Complainants*, <br><br> v. <br><br> ISO New England Inc., Central Maine Power Company, Versant Power, and Maine Electric Power Company, *Respondents.* | Docket No. EL26-_____-000 |

NOTICE OF COMPLAINT (September 1, 2026)

Take notice that on September 1, 2026, pursuant to sections 206 and 306 of the Federal Power Act (FPA), 16 U.S.C. 824e and 825e, and Rule 206 of the Federal Energy Regulatory Commission's (Commission) Rules of Practice and Procedure, 18 CFR 385.206, the Maine Office of the Public Advocate, Maine Public Utilities Commission, and Maine Department of Energy Resources (Maine State Agencies or Complainants) filed a formal Complaint against Central Maine Power Company, Versant Power, and Maine Electric Power Company (Respondents) alleging that these utilities are not eligible for a fifty basis point adder to reward their willingness to transfer operational control over their transmission facilities to a Transmission Organization. Because this adder is authorized under ISO New England Inc.'s (ISO-NE) Open Access Transmission Tariff, ISO-NE has been included as a Respondent.

The Complainants certify that copies of the Complaint were served on the contacts listed for each Respondent in the Commission's list of Corporate Officials.

Any person desiring to intervene or to protest this filing must file in accordance with Rules 211 and 214 of the Commission's Rules of Practice and Procedure (18 CFR 385.211, 385.214). Protests will be considered by the Commission in determining the

appropriate action to be taken, but will not serve to make protestants parties to the proceeding. Any person wishing to become a party must file a notice of intervention or motion to intervene, as appropriate. The Respondents' answer and all interventions, or protests must be filed on or before the comment date. The Respondents' answer, motions to intervene, and protests must be served on the Complainants.

The Commission encourages electronic submission of protests and interventions in lieu of paper using the "eFiling" link at *http://www.ferc.gov*. Persons unable to file electronically should submit an original and 5 copies of the protest or intervention to the Federal Energy Regulatory Commission, 888 First Street N.E., Washington, DC 20426.

This filing is accessible on-line at *http://www.ferc.gov*, using the "eLibrary" link and is available for electronic review in the Commission's Public Reference Room in Washington, DC. There is an "eSubscription" link on the Web site that enables subscribers to receive email notification when a document is added to a subscribed docket(s). For assistance with any FERC Online service, please email *FERCOnlineSupport@ferc.gov*, or call (866) 208–3676 (toll free). For TTY, call (202) 502–8659.

*Comment Date:* 5:00 p.m. Eastern Time on Tuesday, September 21, 2026.

Dated: September 1, 2026

CERTIFICATE OF SERVICE

Pursuant to Commission Rules of Practice and Procedure Nos. 206(c) and 2010, I hereby certify that I have this 1st day of September, 2026, caused the foregoing document to be served upon the Corporate Officials of Respondents Central Maine Power Company, Versant Power, Maine Electric Power Company, and ISO New England Inc., that are identified on the Commission's list maintained pursuant to 18 C.F.R. § 385.2010(k).

**Central Maine Power Company**

Noelle M. Kinsch
VP—General Counsel & Corporate Secretary
Avangrid Networks, Inc.
80 State Street
Albany, NY 12207
Tel. (518) 434-4977
Noelle.Kinsch@avangrid.com

Catherine P. McCarthy
Bracewell LLP
2001 M St.,NW, Suite 900
Washington, DC 20036
Tel. 202-828-5839
cathy.mccarthy@bracewell.com

**Versant Power**

Arielle Silver Karsh
VP, Legal & Regulatory Affairs
Versant Power
PO Box 932
Bangor, ME 04402-0932
207-973-2819
arielle.silverkarsh@versantpower.com

Jeffrey M. Jakubiak
Vinson & Elkins LLP
1114 Avenue. of the Americas,
32nd Floor
New York, NY 10036
(212) 237-0000
JJakubiak@velaw.com

**Maine Electric Power Company**

Noelle M. Kinsch
VP—General Counsel & Corporate Secretary
Avangrid Networks, Inc.
80 State Street
Albany, NY 12207
Tel. (518) 434-4977
Noelle.Kinsch@avangrid.com

Catherine P. McCarthy
Bracewell LLP
2001 M St. NW, Suite 900
Washington, DC 20036
Tel. 202-828-5839
cathy.mccarthy@bracewell.com

**ISO New England Inc.**

Maria Gulluni
Vice President and General Counsel ISO New England Inc.
One Sullivan Road Holyoke, MA 01040-2841
Telephone: 413-540-4473
Fax: 413-535-4379
Email: mgulluni@iso-ne.com

Christopher J. Hamlen
Senior Regulatory Counsel
ISO New England Inc.
One Sullivan Road
Holyoke, MA 01040-2841
Telephone: 413-540-4425
Fax: 413-535-4379
Email: chamlen@iso-ne.com

*/s/ Mary Kate Jaworowski*
Mary Kate Jaworowski

Document Content(s)

Maine State Agencies Complaint re RTO Adder (final).pdf ..................1